IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISON

| | | |
|---|---|---|
| VICTOR SANTANA, on Behalf of Himself and All Other Similarly Situated, | ) | CASE NO. 2:25-cv-01631 |
| | ) | JUDGE W. SCOTT HARDY |
| Plaintiff, | ) | |
| v. | ) | **FIRST AMENDED COMPLAINT** |
| MCCONWAY & TORLEY, LLC | ) | **(Jury demand endorsed hereon)** |
| Defendant. | ) | |

Now comes Plaintiff Victor Santana ("Plaintiff"), by and through undersigned counsel, and for his First Amended Complaint against Defendant McConway & Torley, LLC ("Defendant"), states and alleges the following:

## INTRODUCTION

1. This is a "collective action" instituted by Plaintiff as a result of Defendant's practices and policies of not paying its hourly, non-exempt employees, including Plaintiff and other similarly situated employees, wages for all hours worked, including overtime compensation at the rate of one and one-half times their regular rate of pay for all the hours they worked over 40 each workweek and for failing to include bonuses, incentives, shift differentials, and/or other remuneration earned by Plaintiff and other similarly situated employees in their regular rate of pay for purposes of calculating their overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219.

2. Plaintiff also brings this action as a "class action" pursuant to Fed. R. Civ. P. 23 to remedy violations of the Pennsylvania Minimum Wage Act, 43 P.S. § 333.101, *et seq.* ("PMWA").

## JURISDICTION AND VENUE

3. This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), *et seq*.

4. The Court has personal jurisdiction over Defendant because its headquarters and principal place of business is in Pennsylvania.

5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they are so related to the FLSA claims as to form part of the same case or controversy.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant's headquarters is located in this District and Division, and a substantial part of the events and omissions giving rise to the claims occurred in this District and Division.

## PARTIES

7. At all material times, Plaintiff was a resident of Berks County, Pennsylvania.

8. At all material times, Plaintiff was an employee within the meaning of 29 U.S.C. § 203(e) and 43 P.S. § 333.103.

9. At all material times, Plaintiff was an employee engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

10. At all material times, Defendant was and is a foreign limited liability company, organized and existing under the laws of the State of Delaware, with its headquarters and plant location at 109 48th Street, Pittsburgh, Pennsylvania 15201.

11. At all material times, Defendant was and is an employer within the meaning of 29 U.S.C. § 203(d).

12. At all material times, Defendant has been an enterprise in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(r).

13. At all material times, Defendant has been an enterprise in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), and has enjoyed yearly gross revenue in excess of $500,000.

14. Plaintiff's written consent to this action is attached hereto as Exhibit 1.

15. Written consents to join this action, as and when executed by other individual plaintiffs, will be filed pursuant to 29 U.S.C. § 216(b).

## FACTUAL ALLEGATIONS

16. Defendant manufactures rail car and freight care coupler products and operates plant locations in Pennsylvania, including in Pittsburgh, Pennsylvania; McKees Rocks, Pennsylvania; and Kutztown, Pennsylvania.

17. From approximately April 2023 to January 2025, Defendant employed Plaintiff as a manufacturing employee at its Kutztown, Pennsylvania location.

18. Specifically, Plaintiff worked as a welder.

19. Defendant employed similarly situated manufacturing employees at its facilities as welders, thermal finishers, assemblers, operators, grinders, and tool room attendants (hereinafter "manufacturing employees").

20. Plaintiff and other similarly situated manufacturing employees had the same and/or substantially similar job duties and/or responsibilities and were subjected to the same policies and procedures.

21. Defendant classified Plaintiff and other similarly situated manufacturing employees as non-exempt employees.

22. Defendant paid Plaintiff and other similarly situated manufacturing employees an hourly wage.

23. Defendant paid Plaintiff and other similarly situated manufacturing employees bonuses, incentives, shift differentials, and/or other remuneration.

24. Plaintiff and other similarly situated manufacturing employees were regularly scheduled to work 40 or more hours per week.

25. Plaintiff and other similarly situated manufacturing employees regularly worked more than 40 hours per week.

26. Plaintiff estimates that he worked on average, approximately 40 to 50 hours or more per workweek, unless there was mandatory overtime where he would then work approximately 50 to 60 hours per workweek.

**Failure to Pay for All Hours Worked**

27. Plaintiff and other similarly situated manufacturing employees were only paid for work performed between their scheduled start and stop times, regardless of when they clocked out, and were not paid for work performed before and after their scheduled start and stop times, including: changing into and out of personal protective equipment, including but not limited to a uniform (pants and shirt), gloves, apron, hardhat, steel-toed boots, Kevlar sleeves, shin guards, ear plugs, safety glasses, and a respirator/face mask.

28. The pre-shift work—including changing into and out of personal protective equipment, including but not limited to a uniform (pants and shirt), gloves, apron, hardhat, steel-toed boots, Kevlar sleeves, shin guards, ear plugs, safety glasses, and a respirator/face mask took upwards of 15 minutes or more. In order to start work on time, Plaintiff and other similarly situated

manufacturing employees had to arrive early to start this pre-shift work in order to be ready at the start of their scheduled shift.

29. Similarly, the post-shift work took upwards of approximately 10 minutes or more.

30. Defendant knew that Plaintiff and other similarly situated manufacturing employees performed this pre-shift and post-shift work because it required them to perform it and supervisors observed them performing it.

**Failure to Pay for Donning Time**

31. Before Plaintiff and other similarly situated manufacturing employees began their shifts, they donned personal protective equipment, including a uniform (pants and shirt), gloves, apron, hardhat, steel-toed boots, Kevlar sleeves, shin guards, ear plugs, safety glasses, and a respirator/face mask.

32. Wearing personal protective equipment was necessary because Plaintiff and other similarly situated manufacturing employees could not safely perform their work without it. It protected Plaintiff and other similarly situated manufacturing employees from various injuries, including head, hand, foot, eye, ear, and other bodily injuries.

33. Additionally, Defendant required Plaintiff and other similarly situated manufacturing employees to wear the personal protective equipment, required them to put it on and take it off at work so that it was maintained in a safe, sanitary, and reliable condition.

34. The time Plaintiff and other similarly situated manufacturing employees spent donning their personal protective equipment was an integral and indispensable part of their principal activities, was required by Defendant, the Occupational Safety and Health Administration ("OSHA"), and various regulations concerning sanitation, including those promulgated by the United States Department of Agriculture ("USDA"), and was performed for

Defendant's benefit in that it helped keep the plant floors safe and sanitary, and helped promote a more safe and efficient manufacturing process.

35. Donning personal protective equipment was an intrinsic element of Plaintiff and other similarly situated manufacturing employees' job duties.

36. Plaintiff and other similarly situated manufacturing employees could not dispense with donning personal protective equipment.

37. Plaintiff and other similarly situated manufacturing employees were not paid for time spent donning their personal protective equipment.

**Failure to Pay for Doffing Time**

38. After their shifts ended, Plaintiff and other similarly situated manufacturing employees doffed their personal protective equipment.

39. The time Plaintiff and other similarly situated manufacturing employees spent doffing their personal protective equipment was an integral and indispensable part of their principal activities, was required by Defendant, the Occupational Safety and Health Administration ("OSHA"), and various regulations concerning sanitation, including those promulgated by the United States Department of Agriculture ("USDA"), and was performed for Defendant's benefit in that it helped keep the plant floors safe and sanitary, and helped promote a more safe and efficient manufacturing process.

40. Doffing personal protective equipment was an intrinsic element of Plaintiff and other similarly situated manufacturing employees' job duties.

41. Plaintiff and other similarly situated manufacturing employees could not dispense doffing their personal protective equipment if they are to perform their manufacturing work.

42. Plaintiff and other similarly situated manufacturing employees were not paid for time spent doffing their personal protective equipment.

**Failure to Pay Overtime Compensation**

43. As a result of Plaintiff and other similarly situated manufacturing employees not being paid for all hours worked, Plaintiff and other similarly situated manufacturing employees were not paid overtime compensation for all of the hours they worked over 40 each workweek.

44. The time Plaintiff and other similarly situated employees spent performing the unpaid work referenced above was in addition to the 40 or more hours they regularly worked between their scheduled start and stop times each workweek, and thus, constituted overtime hours worked, for which they were/are entitled to overtime compensation at a rate of one and one-half times their regular hourly rate of pay.

**Failure to Include Bonuses, Incentives, Shift Differentials, and Other Remuneration in Overtime Calculations**

45. Defendant paid Plaintiff and other similarly situated manufacturing employees bonuses, incentives, shift differentials and/or other remuneration in addition to their hourly wage.

46. Defendant paid Plaintiff and other similarly situated manufacturing employees shift differentials for working specific shifts, sign on bonuses, and quarterly production incentives for meeting certain metrics.

47. Defendant failed to include the shift differentials, bonuses, incentives, and other remuneration paid to Plaintiff and other similarly situated manufacturing employees in the regular rate of pay for purposes of calculating their overtime compensation.

48. As a result of Defendant's failure to include the shift differentials, bonuses, incentives, and/or other remuneration in the calculation of the regular rate of pay for the calculation

of overtime compensation, Plaintiff and other similarly situated employees were denied significant amounts of overtime compensation.

**Defendant Willfully Violated the FLSA**

49. Defendant knowingly and willfully engaged in the above-mentioned violations of the FLSA.

50. Defendant knew that, and otherwise showed reckless disregard as to whether its conduct was prohibited by the FLSA.

51. Defendant had/has a common practice and policy of requiring Plaintiff and other similarly situated employees to perform the unpaid work referenced above and not compensating them for time spent performing such work.

52. Defendant knew that Plaintiff and other similarly situated employees were performing the unpaid work because Defendant required them to perform it and supervisors observed them performing it.

53. Defendant, who determined the work schedules of Plaintiff and other similarly situated employees, also knew that the time Plaintiff and other similarly situated employees spent performing such unpaid work was in addition to the 40 hours or more that Defendant scheduled them to work, and thus, knew that Plaintiff and other similarly situated employees should have been paid overtime compensation for such unpaid work.

54. Defendant knew that, and otherwise showed reckless disregard as to whether its conduct in failing to properly pay Plaintiff and other similarly situated employees for the unpaid work referenced above violated the FLSA.

55. Defendant knew or should have known that its policies and practices violate the law, and Defendant did not make and has not made a good faith effort to comply with the FLSA.

Rather, Defendant knowingly, willfully, and/or with reckless disregard of the law has carried out its unlawful pattern, practice, and policy of not paying its Plaintiff other similarly situated manufacturing employees for all hours worked. Defendant's method of paying Plaintiff and other similarly situated employees was not based on a good faith and reasonable belief that its conduct complied with the law.

56. Upon information and belief, Defendant failed to make, keep, and preserve accurate records of all of the unpaid work performed by Plaintiff and other similarly situated manufacturing employees employed by Defendant.

## COLLECTIVE ACTION ALLEGATIONS

57. Plaintiff brings Count One of this action on his own behalf pursuant to 29 U.S.C. § 216(b), and on behalf of all other persons similarly situated who have been, are being, or will be adversely affected by Defendant's unlawful conduct.

58. The group of individuals Plaintiff seeks to represent and for whom Plaintiff seeks the right to send "opt-in" notices for purposes of this collective action, and of which Plaintiff is himself a member, is composed of and defined as follows:

> All current and former non-exempt manufacturing employees of McConway & Torley who worked at one or more of its manufacturing plants in Pennsylvania any time between three (3) years prior to the filing of this suit and the date of final judgment in this matter ("FLSA Class").

59. Plaintiff is unable, at this time, to state the exact size of the FLSA Class, but upon information and belief, avers that it consists of more than 500 persons.

60. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid wages, unpaid overtime compensation, liquidated damages, attorneys' fees, and costs under the FLSA. In addition to Plaintiff, numerous current and former

manufacturing employees are similarly situated with regard to their claims for unpaid wages and damages. Plaintiff is representative of those other employees and is acting on behalf of their interests as well as his own in bringing this action.

61. The similarly situated manufacturing employees are known to Defendant and are readily identifiable through its payroll records. These individuals may readily be notified of this action and allowed to opt in pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid wages, unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

62. Although the exact amount of damages may vary among the similarly situated employees in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

**PENNSYLVANIA CLASS ACTION ALLEGATIONS**

63. Plaintiff brings Count Two of this action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of himself and all other members of the class ("the Pennsylvania Class") defined as:

> All current and former non-exempt manufacturing employees of McConway & Torley who worked at one or more of its manufacturing plants in Pennsylvania at any time between three (3) years prior to the filing of this suit and the date of final judgment in this matter ("Pennsylvania Class").

64. The Pennsylvania Class is so numerous that joinder of all class members is impracticable. Plaintiff is unable to state at this time the exact size of the potential Pennsylvania Class, but upon information and belief, avers that it consists of at least 50 persons.

65. There are questions of law or fact common to the Pennsylvania Class, including but not limited to the following: (a) whether Defendant failed to pay overtime compensation to its manufacturing employees for hours worked in excess of 40 each workweek; (b) whether Defendant

failed to include all remuneration paid in the regular rate calculation; and (c) what amount of monetary relief will compensate Plaintiff and other members of the class for Defendant's violation of the PMWA , 43 P.S. § 333.101, *et seq.*

66. The claims of the named Plaintiff Victor Santana are typical of the claims of other members of the Pennsylvania Class. Named Plaintiff's claims arise out of the same uniform course of conduct by Defendant, and are based on the same legal theories, as the claims of the other Pennsylvania Class members.

67. Named Plaintiff Victor Santana will fairly and adequately protect the interests of the Pennsylvania Class. His interests are not antagonistic to, but rather are in unison with, the interests of the other Pennsylvania Class members. The named Plaintiff's counsel has broad experience in handling class action wage-and-hour litigation and is fully qualified to prosecute the claims of the Pennsylvania Class in this case.

68. The questions of law or fact that are common to the Pennsylvania Class predominate over any questions affecting only individual members. The primary questions that will determine Defendant's liability to the Pennsylvania Class, listed above, are common to the class as a whole, and predominate over any questions affecting only individual class members.

69. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Pennsylvania Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Pennsylvania Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

**COUNT ONE**
**Violations of Fair Labor Standards Act**

70. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

71. Defendant's practice and policy of not paying Plaintiff and other similarly situated manufacturing employees for all time worked and overtime compensation at a rate of one and one-half times their regular rate of pay for all the hours they worked over 40 each workweek violated the FLSA, 29 U.S.C. §§ 201-219 and 29 C.F.R. § 785.24.

72. Defendant intentionally failed to pay Plaintiff and other similarly situated employees' required overtime compensation for hours worked in excess of 40 per workweek.

73. Defendant's practice and policy of failing to include bonuses, incentives, shift differentials, and/or other remuneration earned by Plaintiff and other similarly situated manufacturing employees in the calculation of the regular rate for purposes of calculating their overtime compensation 29 C.F.R. §§ 778.208-209, and 29 C.F.R. § 548.502.

74. Defendant's conduct in failing to pay Plaintiff and other similarly situated employees for all time worked and overtime compensation at a rate of one and one-half times their regular rate of pay for all the hours they worked over 40 each workweek was willful and/or in reckless disregard of the rights of Plaintiff and those similarly situated.

75. Defendant's actions and/or omissions were not in good faith.

76. By engaging in the above-mentioned conduct, Defendant willfully, knowingly, and/or recklessly violated the provisions of the FLSA.

77. As a result of Defendant's practices and policies, Plaintiff and other similarly situated manufacturing employees have been damaged in that they have not received wages due to them pursuant to the FLSA.

## COUNT TWO
**(Violations of the Pennsylvania Minimum Wage Act)**

78. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

79. Defendant's practice and policy of not paying Plaintiff and other similarly situated manufacturing employees for all time worked and overtime compensation at a rate of one and one-half times their regular rate of pay for all of the hours they worked over 40 each workweek violated the PMWA, 43 P.S. § 333.101, *et seq.*

80. Defendant's practice and policy of failing to include bonuses, incentives, shift differentials, and/or other remuneration in the regular rate of pay for purposes of calculating overtime compensation violated the PMWA, 43 P.S. § 333.101, *et seq.*

81. Defendant's failure to keep records of all of the hours worked each workday and the total hours worked each workweek by Plaintiff and other similarly situated manufacturing employees violated the PMWA, 43 P.S. § 333.101, *et seq.*

82. By engaging in the above-mentioned conduct, Defendant willfully, knowingly and/or recklessly violated the provisions of the PMWA, 43 P.S. § 333.101, *et seq.*

83. As a result of Defendant's practices and policies, Plaintiff and other similarly situated manufacturing employees have been damaged in that they have not received wages due to them pursuant to the PMWA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, and all those similarly situated, collectively pray that this Honorable Court:

A. Issue an order permitting this litigation to proceed as a collective action pursuant to the FLSA;

B. Order prompt notice to all FLSA Class members that this litigation is pending and that they have the right to "opt in" to this litigation pursuant to 29 U.S.C. § 216(b);

C. Issue an order certifying the Pennsylvania Class pursuant to Fed. R. Civ. R. 23(a) and (b)(3);

D. Award Plaintiff and the classes he represents actual damages for unpaid wages;

E. Award Plaintiff and the classes he represents statutory liquidated damages in an amount to the unpaid wages found due to Plaintiff and the classes he represents under the FLSA and PMWA;

F. Award Plaintiff and the classes he represents pre- and post-judgment interest at the statutory rate;

G. Award Plaintiff and the classes he represents attorneys' fees, costs, and disbursements; and

H. Award Plaintiff and the classes he represents further and additional relief as this Court deems just and proper.

Respectfully submitted,

/s/ *Lori M. Griffin*
Lori M. Griffin (OH 0085241)
Anthony J. Lazzaro (OH 0077962)
Matthew S. Grimsley (OH 0092942)
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, OH 44022
Telephone: 216-696-5000
Facsimile: 216-696-7005
lori@lazzarolawfirm.com
anthony@lazzarolawfirm.com
matthew@lazzarolawfirm.com

*Attorneys for Plaintiff*

**JURY DEMAND**

Pursuant to their rights under the Constitution of the United States, U.S. CONST. amend VII, and FED R. CIV. P. 38(a), Plaintiff hereby demands trial by jury.

/s/ *Lori M. Griffin*
Lori M. Griffin (OH 0085241)

*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 31, 2025 a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access the filing through the Court's system.

/s/ Lori M. Griffin
One of the Attorneys for Plaintiff